## A98A0975. HAYNES v. THE STATE.
(507 SE2d 151)

ANDREWS, Chief Judge.

Darren Pernell Haynes was found guilty by a jury of voluntary manslaughter and possession of a firearm during the commission of a crime. Haynes brings this out-of-time appeal from the judgment of conviction entered on the guilty verdicts.[1]

---

[1] In *Haynes v. State*, 227 Ga. App. 64 (488 SE2d 119) (1997), we remanded this case to the trial court for a hearing to determine whether Haynes was entitled to an out-of-time

Haynes was charged with murder for shooting and killing Victor Maurice Martin. The evidence showed that Haynes and a friend were engaged in an argument with Martin's brother. Martin was present but was not engaged in the argument. None of the persons present at the argument was armed. Haynes then left the scene of the argument with his friend, retrieved a handgun, and both returned to the scene about five minutes later. Martin and his brother were still there, and the argument resumed. The handgun retrieved by Haynes was prominently displayed stuck in the waistband of Haynes' pants. Martin saw the handgun in Haynes' pants and said, "I see you've got your gun, so I guess I'll get mine." At that point, Martin turned and started to walk away, then turned around and walked toward Haynes. One witness at the scene testified that Martin walked up to Haynes, and Haynes and Martin were facing each other "fussing" when Haynes pulled the gun and shot Martin. Another witness testified that Martin approached Haynes, said some words, made no attempt to attack Haynes, and Haynes shot him. A third witness testified that Martin came toward Haynes "like he was fixing to grab him," and Haynes shot him. This witness also testified that Martin did not have his fists balled and did not appear as though he was going to hit Haynes. Haynes testified that Martin approached him "like he was trying to grab the gun" and that Martin pushed him. Haynes said that he knocked Martin's hand away, stepped back from him, pulled the gun and shot him. Haynes was then heard to say, "Now I got to do a hundred years for some bull shit."

1. The evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Haynes was guilty of the lesser offense of voluntary manslaughter and was guilty of possession of a firearm during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). For the reasons which follow, the trial court did not err in denying Haynes' motion for a new trial.

2. Haynes claims the trial court erred by refusing to admit evidence that the victim had committed specific acts of violence toward third persons and had a reputation for violence.

"[E]vidence of specific acts of violence by a victim against third persons is admissible when the defendant claims justification. [Such evidence] can be relevant in weighing the truth of the defendant's claim of justification. The defendant has the burden of proving that the evidence of specific acts of violence by the victim should be admitted. To meet that burden, the defendant must, at a minimum, (1) follow

appeal. On remand, the trial court granted an out-of-time appeal and set aside Haynes' conviction for aggravated assault, concluding that it merged with the voluntary manslaughter conviction.

the procedural requirements for introducing the evidence, (2) establish the existence of prior violent acts by competent evidence, and (3) make a prima facie showing of justification. . . . To make this prima facie showing, the defendant must show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself." (Citations omitted.) *Laster v. State,* 268 Ga. 172, 173-174 (486 SE2d 153) (1997).

Haynes met the procedural requirements by giving the State pretrial notice of his intent to present evidence that the victim had committed specific acts of violence against third persons. Uniform Superior Court Rule 31.6. He also proffered competent evidence of the existence of the prior violent acts. We agree with the trial court, however, that Haynes failed to make a prima facie showing of justification. Haynes' testimony that Martin approached him, pushed him, and tried to grab the gun may have provided some evidence that Martin acted aggressively and assaulted him. However, additional testimony that, after Haynes knocked Martin's hand away, he stepped back from Martin, then pulled out his gun and shot him, does not show that Haynes was honestly trying to defend himself when he fired the fatal shot. See *Walden v. State,* 267 Ga. 162, 163 (476 SE2d 259) (1996). Since Haynes did not make out a prima facie case of justification, the trial court properly excluded evidence of the victim's specific acts of violence toward third persons.

Haynes also proffered and sought admission of evidence that the victim had a general reputation for violent behavior. "The general rule is that the character of a victim is not admissible because it is as unlawful to kill a violent person as to kill a non-violent person. The exception to this rule, and the only situation in which a defendant may show the victim's reputation for violence, is where the defendant makes a prima facie showing that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant was honestly trying to defend himself." (Citations omitted.) *Chapman v. State,* 258 Ga. 214, 215 (367 SE2d 541) (1988).

This is the identical prima facie showing Haynes failed to make for admission of evidence that the victim committed specific acts of violence toward third persons. Since we have determined that Haynes failed to make the necessary prima facie case, the trial court also correctly excluded evidence of the victim's reputation for violence.

3. It follows from the holding in Division 2, supra, that the trial court did not err in refusing to charge the jury with respect to the victim's commission of specific acts of violence toward third persons and the victim's reputation for violence.

4. Haynes claims that his trial counsel was ineffective because: (a) he did not effectively argue for the admission of certain evidence,

(b) he did not argue in closing as strongly as he should have that Haynes acted in self-defense, and (c) he failed to argue that the conviction for aggravated assault merged with the voluntary manslaughter conviction.

"The Sixth Amendment right to assistance of counsel also guarantees a criminal defendant the right to effective . . . counsel. *Black v. State*, 264 Ga. 550 (448 SE2d 357) (1994). In order to obtain the reversal of a conviction on a claim of ineffectiveness of counsel, a defendant has the burden of proof under both prongs of the test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). *Zant v. Moon*, 264 Ga. 93, 97 (440 SE2d 657) (1994). Under *Strickland*, supra, the defendant must prove: (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. In determining whether or not counsel's performance was deficient under the first prong, a court must measure counsel's performance against an objective standard of reasonableness in light of all the circumstances and apply the strong presumption that all of counsel's significant decisions were made in the exercise of reasonable professional judgment. *Strickland*, supra; *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985). Under the second prong, the test is whether there was a reasonable probability that the outcome of the proceedings would have been different but for counsel's deficient performance. Id. 'A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless clearly erroneous.' *Williams v. State*, 214 Ga. App. 106 (446 SE2d 789) (1994)." *Parker v. State*, 220 Ga. App. 303, 306-307 (469 SE2d 410) (1996).

Since on remand the trial court merged the aggravated assault conviction with the voluntary manslaughter conviction, the claim that trial counsel was ineffective for failing to raise this argument is moot. *Cunningham v. State*, 222 Ga. App. 740, 744 (475 SE2d 924) (1996).

As to the claim that trial counsel did not argue forcefully enough in closing that the shooting was in self-defense, the trial court concluded that, based on the lack of evidence supporting that argument and the fact that Haynes was charged with murder, defense counsel's closing arguments with regard to self-defense and other evidence supporting the conclusion that Haynes committed lesser offenses than murder were within the parameters of acceptable trial strategy. We find no clear error in the trial court's finding that trial counsel was not ineffective in his closing argument.

Haynes also contends that trial counsel was ineffective because he failed to cite all of the applicable legal authority to support the argument that the trial court should have admitted evidence that the victim of the shooting had committed specific acts of violence toward

third persons. Since we concluded in Division 2, supra, that the trial court properly refused admission of this evidence, there is no basis for concluding that trial counsel was ineffective for failing to obtain its admission.

5. Haynes contends the State violated his Equal Protection Clause rights under the Fourteenth Amendment by exercising its peremptory strikes to exclude African-American potential jurors on the basis of race. He contends the trial court erred by denying his motion making this claim under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). See also *Hernandez v. New York*, 500 U. S. 352 (111 SC 1859, 114 LE2d 395) (1991); *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992); *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995).

A claim under these authorities of a race-based violation of equal protection initiates a three-step process. First, the trial court must determine if the party challenging a strike has established a prima facie inference that the strike was exercised with racially discriminatory intent. Second, if a prima facie case of racial discrimination is established, then the burden of production shifts to the proponent of the strike to give a race-neutral explanation for striking the potential juror in question. Although the explanation must be race-neutral on its face and must be a clear, reasonably specific explanation of the proponent's legitimate reasons for exercising the strike, the explanation is not required to be persuasive or even plausible. A legitimate reason under Step 2 is not required to make sense, but need only be a reason that does not deny equal protection. In Step 2, the facial validity of the explanation is the issue, and unless a racially discriminatory intent is inherent in the explanation, the trial court is required to accept it as race-neutral. Although the burden of producing an explanation shifts to the proponent of the strike in Step 2, the ultimate burden of persuasion regarding discriminatory intent remains with and never shifts from the party challenging the strike. Third, if the proponent of the strike carries the Step 2 burden of giving a facially race-neutral explanation, the trial court must then evaluate the persuasiveness of the proponent's explanation and determine whether the party challenging the strike has carried the burden of proving that the strike was exercised with racially discriminatory intent. In carrying out this task under Step 3, the trial court must decide whether to believe the explanation and accept that the strike was not racially motivated or to find the explanation unpersuasive and conclude that the strike was exercised with racially discriminatory intent. In making its determinations under the three-step process, the trial court is entitled to great deference and its findings should not be disturbed unless clearly erroneous. *Jackson v. State*, 265 Ga. 897 (463 SE2d 699) (1995); *Chandler v. State*, 266 Ga.

509 (467 SE2d 562) (1996); *Malone v. State*, 225 Ga. App. 315 (484 SE2d 6) (1997).

The State exercised three of its peremptory strikes to exclude African-American potential jurors. The trial court found that Haynes established a prima facie inference that the three strikes were exercised with racially discriminatory intent and required the State to give explanations for the strikes. The State explained that two of the potential jurors were struck because they either knew the defendant or the victim, or they were friends with witnesses in the case. The State said it struck the third potential juror because she was friends with the mother of a key defense witness. The trial court concluded that the State's explanations were persuasive, the strikes were not racially motivated, and Haynes had not carried his burden of proving the strikes were exercised with racially discriminatory intent. The trial court's findings were not clearly erroneous; therefore, we find no error. *King v. State*, 224 Ga. App. 400, 401 (480 SE2d 385) (1997).

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 25, 1998 —
RECONSIDERATION DENIED SEPTEMBER 9, 1998.

*Parker & Lundy, Richard J. Lundy*, for appellant.
*James R. Osborne, District Attorney*, for appellee.